UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

SCANNED at WVCF and Emailed on
9-16-22 by BH - 90 pages.
(date)    (initials)    (num)

Daniel C. Vanderpool Jr.,
                    Plaintiff,                          )
                                                        )
        vs.                                             )
                                                        )
Capital Accounts L.L.C.;                                )   Case No.:  2:22-cv-00403-JPH-DLP
                                                        )
John Wesley Shutt, in his official and/or individual capacity )
as the Majority Owner of Capital Accounts L.L.C.        )
                                                        )
Greg Norwinski, in his official and/or individual capacity as )
the Minority Owner of Capital Accounts L.L.C.           )
                                                        )
Dustin Holbrook, in his official and/or individual capacity as )
a Sales and Site Manager for Capital Accounts L.L.C.    )
                                                        )
Robert Winkler, in his official and/or individual capacity as a )
Sales and Site Manager for Capital Accounts L.L.C.      )
                                                        )
For Indiana Correctional Industries (I.C.I.);           )
                                                        )
Mike Herron, in his official and/or individual capacity, as the )
Director of Operations of Indiana Correctional Industries )
                                                        )
Victor Manzo, in his official and/or individual capacity, as a )
Deputy Director of Operations for Indiana Correctional  )
Industries,                                             )
                                                        )
For Indiana Department of Corrections (I.D.O.C.);       )
                                                        )
Robert Eric Carter Jr., in his official and/or individual )
capacity, as the Commissioner of the Indiana Department of )
Corrections,                                            )
                                                        )
Frank Vanihil in his official and/or individual capacity, as the )
Warden of Wabash Valley Correctional Facility,          )
                    Defendants,

**FILED**

**09/16/2022**

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

# TABLE OF CONTENTS

**Page**

MOTION FOR JURY DEMAND............................................................ 1

JURISDICTION AND LIABILTY......................................................... 3

PARTIES ADDRESSES.................................................................... 4

DEFENDANTS AND LIABILTY........................................................ 6

EXHAUSTION OF ADMINISTRATIVE REMDIES........................... 13

CLAIM OF RELIEF...................................................................... 20

RELIEF REQUESTED................................................................... 21

COUNT I...................................................................................... 23

COUNT II.................................................................................... 33

COUNT III................................................................................... 36

AFFIRMATION OF PLAINTIFF...................................................... 45

## MOTION FOR DEMAND FOR JURY TRIAL

**COMES NOW**, Daniel C. Vanderpool Jr., plaintiff, *pro se*, pursuant to **Fed. R. Civ. P. 38(b)** and **L.R. 38-1**, and asks this Court to grant a Trial by Jury in this cause based on the following facts:

1) Facts exist to survive a Summary Judgement under **Fed. R. Civ. P. 36**.

2) Facts are material and there exists a genuine issue for trial.

3) Grounds exists that a reasonable jury could return a favorable verdict for the plaintiff.

The plaintiff wishes to have the following issues tried by the jury:

1) Whether or not if some or all of the defendants listed in this cause, under Count I, are liable of violating the plaintiffs civil rights, specifically the United States Constitution, Fourteenth Amendment, Equal Protection Clause, as brought forth in this cause of action under **42 U.S.C. 1983**, for deprivation of his civil rights, and if an award of $76,012 in compensatory damages is due.

2) Whether or not if some or all of the defendants listed in this cause, having being found liable of Count I, are liable of conspiring amongst themselves to deprive the plaintiff of his civil rights, as brought forth in this cause of action under **42 U.S.C. § 1985(3)**, for conspiring to interfere with civil rights, and if an award of $20,000 (or an amount deemed just by the jury) is to be assessed to the defendants according to their roles.

3) Whether or not if some or all of the defendants in this cause, having been found liable of count I & II, are liable for failing to take action to prevent a conspiracy as brought forth in this cause of action under **42 U.S.C. § 1986** and if an award of $20,000 (or an

amount deemed just by the jury) is to be assessed to the defendants according to their roles.

4) Whether or not if some or all of the defendants listed in this cause of action are liable under count IV, of violating the Fair Labor Standards Act (FLSA) under **42 U.S.C. § 206(b)** and if an award of $76,012 in compensatory damages is due.

5) Whether or not, if some or all of the defendants, listed in this cause, under Count IV, are liable of violating the plaintiffs civil rights, Specifically the Fifth and Eighth Amendment of the United States Constitution as brought forth in this cause of action under **42 U.S.C. § 1983** and if an award of $60,000 (or an amount deemed just by the jury) is to be assessed to the defendants according to their roles.

**WHEREFORE,** the plaintiff prays this this Court grant this motion and set a time and date for a jury trial to take place.

Daniel C. Vanderpool Jr.

Plaintiff, *pro se*

# I.  JURISDICTION AND LIABILITY

COMES NOW, Daniel C. Vanderpool Jr., plaintiff, *pro se,* who files a complaint under 42 U.S.C. §1983, § 1985(3), 1986 and 29 U.S.C § 206(b), complains of the defendants, and for his cause of actions alleges and says as follows:

1) The district court has jurisdiction over this cause pursuant to **28 U.S.C. § 1331**, which grants the federal district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States.

2) The district court has jurisdiction over this cause under **28 U.S.C. § 1332:**

**(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

**(1)** Citizens of different States;

**(c) (1)** A corporation shall be deemed to be a citizen of every state and foreign state by which it has been incorporated and of the state or foreign state where it has its principle place of business.

3) The district court has jurisdiction over this cause under **29 U.S.C. 206(b):**

Every employer shall pay to each of his employees (other than an employee to whom subsection (a)(5) applies) who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this section by the amendments made to this Act by the Fair Labor Standards Amendments of 1966 [29 USCS 203, 206, 216(b), 218,], not less than the minimum wage rate in effect under subsection (a) (1)

Note* The defendants are not entitled to qualified immunity in this cause. See: "discussion" in Holleman v. Zatecky (2019 Ind. So. Dist.)

*Note: Plaintiff Vanderpool is not naming the State of Indiana, the Indiana Department of Correction, or Indiana Correctional Industries as defendants in an attempt to abridge the states sovereignty immunity under the Eleventh Amendment, but its employees listed under them.

*Note: Plaintiff Vanderpool does name Capital Accounts L.L.C., along with its owners and employees, as a corporation is deemed a citizen in the above jurisdiction 2 (c) (1)

*Note: Indiana Correctional Industries was formally named PEN Products.

## II.     PARTIES ADDRESSES

### PLAINTIFF

Daniel C. Vanderpool Jr.
D.O.C. #123516
Wabash Valley Correctional Facility
P.O. Box 1111
Carlisle, Indiana 47838

### DEFENDANTS

Robert Eric Carter Jr.
Commissioner for the Indiana Department of Correction
302 West Washington Street
Room 334
Indianapolis, Indiana 46204

Frank Vanihil
Warden of Wabash Valley Correctional Facility
6908 South Old U.S. Hwy 41
Carlisle, Indiana 47838

Mike Herron
Director of Indiana Correctional Industries
2010 East New York Street
Indianapolis, Indiana, 46201

Victor Manzo
Deputy Director of Operations for Indiana Correctional Industries
2010 East New York Street
Indianapolis, Indiana, 46201

Capital Accounts L.L.C.
P.O. Box 680608
Franklin Tennessee, 37068.

Wesley John Shutt,
Majority Owner of Capital Accounts L.L.C.
P.O. Box 680608
Franklin Tennessee, 37068

Greg Norwinski
Minority Owner of Capital Accounts L.L.C.
P.O. Box 680608
Franklin Tennessee, 37068

Dustin Holbrook
Sales and Site Manager for Capital Accounts L.L.C.
P.O. Box 680608
Franklin Tennessee, 37068

Robert Winkler
Sales and Site Manager for Capital Accounts L.L.C.
P.O. Box 680608
Franklin Tennessee, 37068

### III. DEFENDANTS AND LIABILITY

4)   Defendant Robert Eric Carter Jr., at all times relevant to this action was/is the Commissioner for the Indiana Department of Correction, and performed duties as the Commissioner for the Indiana Department of Correction, whose address is 302 West Washington Street, Room 334, Indianapolis, Indiana 46204. Those duties include(d): creating, approving, and carrying out all new and previously established Administrative, Operational Policies, Procedures and Executive Directives, such as Administrative Procedure AP 02-01-106. Also in Defendant Robert Eric Carter Jr.'s power is to enter into contracts with private companies to operate joint venture business on departmental grounds in accordance with I.C. 11-10-7-2 & 11-10-7-3, as he did with Capital Accounts L.L.C. Defendant Robert Eric Carter Jr. is defined as a person under **42 U.S.C. § 1983, 1985(3), & 1986**, liable for the violation of federally protected rights while acting under the color of law. Defendant Robert Eric Carter Jr. was responsible for the implementation of the contract between the Indiana Department of Correction, Indiana Correctional Industries (a division of the Indiana Department of Correction), and Capital Accounts L.L.C., and to ensure that the contract was carried out in accordance with state and federal laws and the established departmental policies and procedures. At all times relevant to this cause while acting individually and/or in conspiracy, under the color of law deprived, Plaintiff Daniel C. Vanderpool Jr., an offender confined at the Wabash Valley Correctional Facility, under his care and control, of his federally protected rights. Defendant Robert Eric Carter Jr. is also responsible for violating **29 U.S.C. §206(b)** Fair Labor Standards Act.

5) Defendant Frank Vanihil, at all times relevant to this action was/is the Warden at Wabash Valley Correctional Facility, for the Indiana Department of Correction, and performed duties as the Warden for the Indiana Department of Correction, whose address is 6908 South Old U.S.

Hwy 41, Carlisle, Indiana 47838. Those duties include(d): creating, approving, and carrying out all new and previously established Administrative, Operational Policies, Procedures, and Executive Directives, such as Administrative Procedure AP 02-01-106. It was also Defendant Frank Vanihil's responsibility to carry out contracts with private companies that operate business on departmental grounds in accordance with I.C. 11-10-7-2 & 11-10-7-3, as he did with Capital Accounts L.L.C. Defendant Frank Vanihil is defined as a person under **42 U.S.C. § 1983, 1985(3) & 1986,** liable for the violation of federally protected rights while acting under the color of law. Defendant Frank Vanihil was/is responsible for carrying out the contract between the Indiana Department of Correction, Indiana Correctional Industries, and Capital Accounts L.L.C. and to ensure that the contract was carried out in accordance with state and federal laws, and the established departmental policies and procedures. At all times relevant to this cause while acting individually and/or in conspiracy, under the color of law deprived, Plaintiff Daniel C. Vanderpool Jr, an offender confined at the Wabash Valley Correctional Facility, under his care and control, of his federally protected rights. Defendant Frank Vanihil is also responsible for violating **29 U.S.C. §206(b)** Fair Labor Standards Act.

6. Defendant Mike Herron, at all times relevant to this action was/is the Director of Operations for Indiana Correctional Industries, and preformed duties as the Director of Operations for Indiana Correctional Industries. Whose address is 2010 East New York Street, Indianapolis, Indiana 46201. Those duties include(d): negotiating, entering into contracts with private companies to operate business on departmental grounds in accordance with I.C. 11-10-7-2 & 11-10-7-3, as he did with Capital Accounts L.L.C. Defendant Mike Herron is defined as a person under **42 U.S.C. § 1983, 1985(3) & 1986,** liable for the violation of federally protected right while acting under the color of law. Defendant Mike Herron was responsible for the

implementation of the contract between the Indiana Department of Correction, Indiana Correction Industries (a division of theIndiana Department of Correction), and Capital Accounts L.L.C., and to ensure that the contract was carried out in accordance with state and federal laws, and the established departmental policies and procedures, such as Administrative Procedure AP 02-01-106. At all times relevant to this cause while acting individually and/or in conspiracy, under the color of law deprived, Plaintiff Daniel C. Vanderpool Jr., an offender confined at the Wabash Valley Correctional Facility, under his care and control, of his federally protected rights. Defendant Mike Herron is also responsible for violating **29 U.S.C. §206(b)** Fair Labor Standards Act.

7. Defendant Victor Manzo at all times relevant to this action was/is the Deputy Director of Operations for Indiana Correctional Industries, and preformed duties as the Regional and Site Manager for Indiana Correctional Industries. Whose address is 2010 East New York Street, Indianapolis, Indiana 46201. Those duties include(d): entering into contracts with private companies to operate business on departmental grounds in accordance with I.C. 11-10-7-2 & 11-10-7-3, as he did with Capital Accounts L.L.C. Defendant Victor Manzo is defined as a person under **42 U.S.C. § 1983, 1985(3) & 1986,** liable for the violation of federally protected right while acting under the color of law. Defendant Victor Manzo was responsible for the implementation the contract between the Indiana Department of Correction, Indiana Correction Industries(a division of the Indiana Department of Correction), and Capital Accounts L.L.C., and to ensure that the contract was carried out in accordance with state and federal laws, and the established departmental policies and procedures, such as Administrative Procedure AP 02-01-106. At all times relevant to this cause while acting individually and/or in conspiracy under the color of law deprived Plaintiff Daniel C. Vanderpool Jr., an offender confined at the Wabash

Valley Correctional Facility, under his care and control, of his federally protected rights. Defendant Victor Manzo is also responsible for violating **29 U.S.C. §206(b)** Fair Labor Standards Act.

8. Defendant Wesley John Shutt, at all times relevant to this action was/is the Majority Owner of Capital Accounts L.L.C., and performed duties as the Owner of Capital Accounts L.L.C., negotiated engaged in a joint venture contract with Indiana Correctional Industries (a division of the Indiana Department of Correction). Whose address is P.O. Box 680608 Franklin Tennessee, 37068. Those duties include(d): carrying out the contract in its entirety, following all applicable state and federal laws and the policy and procedures dictated and set forth by the Indiana Department of Correction, Indiana Correctional Industries (a division of the Indiana Department of Correction) and Wabash Valley Correctional Facility. Defendant Wesley John Shutt engaged in operating private business on departmental grounds, in accordance with I.C. 11-10-7-2& 11-10-7-3. Defendant Wesley John Shutt is defined as a person under **42 U.S.C. § 1983, 1985(3) & 1986**, liable for the violation of federally protected right while acting under the color of law. Defendant Wesley John Shutt was responsible for the implementation of the contract between the Indiana Department of Correction and Capital Accounts L.L.C., and to ensure that the contract was carried out in accordance with state and federal law and the established departmental policies and procedures, such as Administrative Procedure AP 02-01-106. At all times relevant to this cause, while acting individually and /or in conspiracy, under the color of law, deprived Plaintiff Daniel C. Vanderpool Jr., an offender confined at the Wabash Valley Correctional Facility, under his supervision and employment, of his federally protected rights. Defendant John Westly Shutt is also responsible for violating **29 U.S.C. § 206(b)** Fair Labor Standards Act.*

9. Defendant Greg Norwinski, at all times relevant to this action was/is a Minority Owner of Capital Accounts L.L.C., and performed duties as the Minority Owner of Capital Accounts L.L.C., negotiated, engaged in a joint venture contract with Indiana Correctional Industries(a division of the Indiana Department of Correction). Whose address is P.O. Box 680608 Franklin Tennessee, 37068. Those duties include(d): carrying out the contract in its entirety, following all applicable state and federal laws, and the policy and procedures, such as Administrative Procedure AP 02-01-106, dictated and set forth by the Indiana Department of Correction, Indiana Correctional Industries (division of the Indiana Department of Correction) and Wabash Valley Correctional Facility. Defendant Greg Norwinski engaged in operating private business on departmental grounds, in accordance with I.C. 11-10-7-2 & 11-10-7-3. Defendant Greg Norwinski is defined as a person under **42 U.S.C. § 1983, 1985(3) & 1986**, liable for the violation of federally protected rights while acting under the color of law.  Defendant Greg Norwinski was responsible for the implementation of the contract between the Indiana Department of Correction, Indiana Correctional Industries and Capital Accounts L.L.C., and to ensure that the contract was carried out in accordance with state and federal laws and the established departmental policies and procedures. At all times relevant to this cause while acting individually and/or in conspiracy under the color of law deprived Plaintiff Daniel C. Vanderpool Jr., an offender confined at the Wabash Valley Correctional Facility, under his supervision and employment, of his federally protected rights. Defendant Greg Norwinski is also responsible for violating **29 U.S.C. §206(b)** Fair Labor Standards Act.*

10. Defendant Dustin Holbrook, at all times relevant to this action was/is Sales and Site Manager for Capital Accounts L.L.C., and performed duties as Sales and Site Manager for Capital Accounts L.L.C., negotiated, engaged, advocated, and participated in the preparation of

the contract and joint venture with the Indiana Department of Correction and Indiana Correctional Industries (a division of the Indiana Department of Correction). Whose address is P.O. Box 680608 Franklin Tennessee, 37068.Those duties include(d): carrying out the contract in its entirety, following all applicable state and federal laws and the policy and procedures dictated and set forth by the Indiana Department of Correction, such as Administrative Procedure AP 02-01-106, Indiana Correctional Industries, and Wabash Valley Correctional Facility. Other duties included the training and development of the plaintiff and offenders as they carried out functions under his direction. Defendant Dustin Holbrook engaged in operating private business on departmental grounds, in accordance with I.C. 11-10-7-2 & 11-10-7-3. Defendant Dustin Holbrook is defined as a person under **42 U.S.C. § 1983, 1985(3) & 1986,** liable for the violation of federally protected rights while acting under the color of law. Defendant Dustin Holbrook was responsible for the implementation for the contract between the Indiana Department of Correction and Capital Accounts L.L.C., and to ensure that the contract was carried out in accordance with state and federal laws and the established departmental policies and procedures such as Administrative Procedure AP 01-02-106. At all times relevant to this cause while acting individually and/or in conspiracy, under the color of law deprived Plaintiff Daniel C. Vanderpool Jr, an offender confined at the Wabash Valley Correctional Facility, under his supervision and employment, of his federally protected rights. Defendant Dustin Holbrook is also responsible for violating **29 U.S.C. § 206(b)** Fair Labor Standards Act.

11. Defendant Robert Winkler at all times relevant to this action was/is Sales and Site Manager for Capital Accounts L.L.C., and performed duties as Sales and Site Manager for Capital Accounts L.L.C., negotiated, engaged, advocated, and participated in the preparation of the contract and joint venture with Indiana Correctional Industries (a division of the Indiana

Department of Correction). Whose address is P.O. Box 680608 Franklin Tennessee, 37068. Those duties include(d), carrying out the contract in its entirety, following all applicable state and federal laws and the policy and procedures dictated by the Indiana Department of Correction and Indiana Correction Industries (a division of the Indiana Department of Correction). Defendant Robert Winkler, as an employee of Capital Accounts L.L.C., who worked on the grounds of Wabash Valley Correctional Facility, directly supervised Plaintiff Vanderpool. Other duties include(d): hiring and firing of offenders, keeping track of all the work hours, handing out raises and bonuses, performance evaluations, the training and development of the offenders, as the carried out functions under his direct supervision as an employee of Capital Accounts L.L.C. Defendant Robert Winkler engaged in operating private business on departmental grounds, in accordance with I.C. 11-10-7-2 11-10-7-3. Defendant Robert Winkler is defined as a person under **42 U.S.C. § 1983, 1985(3) & 1986,** liable for the violation of federally protected rights while acting under the color of law. Defendant Robert Winkler was responsible for the implementation of the contract between the Indiana Department of Correction and Capital Accounts L.L.C., and to ensure that the contract was carried out in accordance with state and federal law and the established departmental policies and procedures, such as Administrative Procedure AP 02-01-106, of the Indiana Department of Correction, Indiana Correctional Industries, and Wabash Valley Correctional Facility. At all times relevant to this cause, while acting individually and/or in conspiracy, under the color of law deprived Plaintiff Daniel C. Vanderpool Jr., an offender confined at the Wabash Valley Correctional Facility, under his supervision, care, and employment, of his federally protected rights. The Defendant is also responsible for violating **29 U.S.C. § 206(b)** Fair Labor Standard Act.*

\* Culpability exists for a private person when working with the state. See <u>Denis v Sparks</u>, 449 U.S. 24, 27-28 101 S. Ct. 183, 66 L. Ed. 185 (1980) <u>Dickman v Office of the Sate's Attny.</u> (2018 U.S. Dist. LEXIS 43043 7th Cir)

## <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

12) Plaintiff Vanderpool attempted to exhaust his administrative remedies through the Offender Grievance Process AP 00-02-301, However, Section IV. USE OF THE OFFENDER GRIENVANCE PROCESS (B) (12) States:

Tort claims seeking monetary compensation is an inappropriate, non-grievable issue. As such, it was returned and unable to be appealed (See Exhibits 8 & 12). Being this issue is a non-grieveable issue, according to policy, any objections by the defendants in relation to this matter is moot. A non-grieveable issue, is an unavailable remedy.

Prisoners who files late complaint nevertheless addressed by prison system has properly exhausted his remedies <u>Ellis v Vadlamudi</u> 568 F. Supp. 2d 778 (2008)

13) Plaintiff Vanderpool states these grievances where not late as he was still on the count letter to work and still receiving back pay. (See Exhibit 2) Necerthless, Plaintiff Vanderpool attempted to resolve this issue.

## IV. STATEMENT OF FACTS TO CLAIM

14) The Defendants, Capital Accounts L.L.C. (a collection agency), it's owners and employees, had a meeting of the minds and entered into a joint venture business contract to operate and conduct business in an office space in the south industries building of Wabash Valley Correctional Facility to Capital Accounts L.L.C. Under this contract, the Commissioner of the Indiana Department of Correction would allow Capital Accounts L.L.C. to use prisoners to carry out its call center operations.

15) Around, July of 2019, the Defendants, John Westly Shutt, the Majority Owner of Capital Accounts L.L.C. and Dustin Holbrook, A Sales and Site Manager for Capital Accounts L.L.C., interviewed Plaintiff Vanderpool and selected him to work in the call center. Defendant Victor Mazo, the Deputy Director of Operations for I.C.I. who supervised the interview but did not participate, informed Plaintiff Vanderpool he would be working in a joint venture program. Plaintiff Vanderpool started non-mandatory employment on September 30th, 2019 until November 11th of 2021. Plaintiff Vanderpool remained on the count letter until February 24th, 2022, when he was reclassed from the call center. (See Exhibit 2).

16) The wage scale was set by Capital Accounts L.L.C. and paid through Indiana Correctional Industries. Defendant Robert Winkler, a Sales and Site Manager for Capital Accounts L.L.C, who worked on site, and directly supervised the prisoners, would log all the hours and bonuses, and then forward those to Indiana Correctional Industries, who in turn would bill Capital Accounts L.L.C. and place the money on Plaintiff Vanderpool's prison account.

17) Despite Administrative Procedure AP 02-01-106 (See Exhibit 3), and state statue 11-10-7-3 (See Exhibit 4), which dictates pay for prisoners wages engaged in a joint venture work

program under I.C. 11-10-7-3, Capital Accounts L.L.C. was told by Defendant Victor Manzo Deputy Director of Operations of Indiana Correctional Industries and the other defendants, they could pay whatever they wanted to pay Plaintiff Vanderpool and the other call center workers as long it was not prevailing wages. Despite the state statue 11-10-7-3 and Departmental AP 02-01-106 both are absolute unopen to interpretation. Plaintiff Vanderpool was similarly situated to other workers and should have been paid the same, commensurate wages to jobs in the community.

18) The wage scale and raises set by Capital Accounts was as such:

Starting at .50 an hour

to .80 after 90 days

to .95 after 275

to $1.10 after 455 days

to $1.25 after 545 days

to $1.50 after 720days

Plaintiff Vanderpool was issued raises every time he was eligible and topped out at $1.50 an hour.

19) Capital Accounts L.L.C. would also issue bonuses to Plaintiff Vanderpool for various reasons such as:

1) Client volume

2) Accounts volume

3) Inbound calls

4) Integrating clients and prospects

5) An average bonus based on the agents he trained performance

6) And various other spot bonuses

The wages and bonuses were set by Capital Accounts L.L.C. and not by I.C.I. Capital Accounts could adjust bonuses as they deemed fit.

21) Plaintiff Vanderpool quickly moved to become the lead and trainer for Capital Accounts L.L.C. after sixty days. He consistently, even while training and performing other administrative functions, closed more accounts, and outperformed every other agent month after month. Capital Accounts L.L.C. (not I.C.I.) would also purchase pizza parties as a bonuses for Plaintiff Vanderpool and the other workers when the exceeded a quota.

19) In Accordance with I.C. 24-4.7-4-2 (Exhibit 7) Plaintiff Vanderpool, when calling clients and prospects was required to introduce himself as:

1) "An Account Manager with Capital Accounts"

Or

2) I am with Capital Accounts"

This in turn identified himself as an employee of Capital Accounts (See Exhibit Script 5(a) & 5(b). Plaintiff Vanderpool also sent e-mails identifying himself as an employee of Capital Accounts L.L.C. There are two other joint venture programs that operate at the facility and paid according the state statue and Administrative Procedure AP 02-01-106 and sate law.

22) Defendant Robert Winkler, a Sales and Site Manager of Capital Accounts L.L.C., worked on site and directly supervised and directed Plaintiff Vanderpool, kept all records of work hours, set the schedules for working, gave raises, performed work evaluations, and had the power to hire or fire (See Exhibit 6(a) & 6(b) with Robert Winkler's signature as supervisor).

23) Plaintiff Vanderpool in this case was "Middle Management". His responsibilities included: quality control and auditing, training new hires, taking incoming calls and complaints, calling to collect on invoices and service charges, creating leads, closing accounts, integrating client and prospects with Capital Accounts L.L.C. software, settle disputes, transferring accounts via e-mail, fax and first-class mail, as well as other various duties, as directed by Defendant Robert Winkler, the Capital Accounts L.L.C. representative on site.

This Joint Venture Program offered no apprenticeship or skill class, other than to provide a profit for a private business.

24) Plaintiff Vanderpool was also directed to lie and deceive clients under the direction of Defendant Robert Winkler and Defendant Dustin Holbrook of Capital Accounts L.L.C., contrary to the concept of rehabilitation. Plaintiff Vanderpool was directed to lie about how accounts where worked and to make up stories to satisfy clients when they asked questions, because Plaintiff Vanderpool was not allowed access to private information about accounts and conversations with collectors. Many times Capital Accounts L.L.C. would receive accounts without consumer information such as address, phone number, date of birth and/or social security numbers. Capital Accounts L.L.C. would not contact or credit report these accounts. However, if a client would call reporting a direct payment, Plaintiff Vanderpool was told to put in a direct payment, charging the client. In the event a client disputed this, Plaintiff Vanderpool was told to tell the client that the account was worked, calls were made, and credit reported when, in fact, never happened by Defendants Dustin Holbrook and Robert Winkler.

25) Defendants Robert Winkler and Dustin Holbrook also directed him when he was calling if someone asked to be placed on the do-not-call list to tell them ok, but to place them on the call back rotation. Capital Accounts L.L.C. did not compile nor comply with the federal do-not-call list. Plaintiff Vanderpool called multiple people back who said "I thought I told you I am not interested, do not call me." This placed Plaintiff Vanderpool in multiple positions where he would be cursed out and caused undo stress and agony. Defendant Robert Winkler forced Plaintiff Vanderpool to work under the threat of being fired to break the law. The caused Plaintiff Vanderpool to see medical several times over dizziness, increased heart rate, brain fog, and nausea.

26) On January 6th, 2022, Plaintiff Vanderpool filed a grievance seeking wages under Administrative Procedure AP 02-01-106 (See Exhibit 8). The Grievance Specialist replied back on January 14th, 2022 "The issue is out of time frame" and "However, you have time to file a tort claim to seek any compensation. Form is in the library" (See Exhibit 9). Plaintiff Vanderpool was still receiving back pay in February from November (See Exhibit 10), placing the issue still in time frame. However, Plaintiff Vanderpool understands and concedes the Offender Grievance Process is not appropriate for monetary issues, nevertheless, Vanderpool attempted to resolve the issue through Administrative Remedies.

27) On February 3rd, 2022, Plaintiff Vanderpool filed a grievance asserting his civil right where violated, requesting monetary compensation (See Exhibit 11). The Grievance Specialist replied back "Monetary compensation is a tort claim issue" "rest of issue out of time frame" (See Exhibit 12) Plaintiff Vanderpool understands and concedes the Offender Grievance Process is not appropriate for monetary issues, nevertheless, Plaintiff Vanderpool attempted to resolve the issue through Administrative Remedies.

28) Plaintiff Vanderpool filed a grievance on March 6th, 2022, requesting his offender time sheets and bonuses while working in the call center from September 30th, 2019 to November 11th, 2022. The Grievance Specialist, S. Crichfield, replied back on April 8th, 2022, stating she would get with staff to get the requested documents (See Exhibit 14). On April 11th, 2022, Grievance Specialist S. Crichfield replied back that she could not provide me with the hours and bonus payouts and suggested that I submit a Public Records Request (See Exhibit 15)

29) On March 31st, 2022, Plaintiff Vanderpool wrote to the Indiana Department of State, Corporations Division, requesting information on Capital Accounts L.L.C. business license to operate in Indiana. Till this date there has been no response.

30) On April 28th, 2022, Plaintiff Vanderpool sent a request for Public Access Records to Defendant Robert Eric Carter Jr., the Commissioner for the Indiana Department of Correction, and Defendant Victor Manzo, the Deputy Director of Operations for the Indiana Correctional Industries , at their perspective addresses in the complaint. Plaintiff Vanderpool also sent a Request for Public Access of Records to Defendant Frank Vanihil, the Warden of Wabash Valley Correctional Facility, and to Mark Wehrmeyer, a Site Manager for Indiana Correctional Industries, via inter-departmental mail on the same date requesting:

1) A copy on the contract between the State of Indiana and the Department of Corrections and any amended versions,

2) A copy of Capital Accounts L.L.C. business license to operate in Indiana,

3) A copy of Plaintiff Vanderpool's hours worked for the time he was employed.

31) On June 10th, 2022, The Wabash Valley Correctional Facility's Public Information Officer replied back:

1) No contract with Capital Accounts L.L.C. were found on the state portal.

2) Capital Accounts L.L.C. in no a public entity, thus you will need to get a copy of their business license from them.

3) You are denied a copy of offender timesheets as they are confidential. (See Exhibit 16)

32) In this event, Plaintiff Vanderpool took all the days available for work and calculated wages due by multiplying eight hours a day by $15.50 an hour, by 613 days (8 X $15.50 X 613) = $76,012

On July 24th, 2022, Plaintiff Vanderpool sent a request to all the defendants and the Facility Public Information Officer, asking all the question "Is I.D.O.C., I.C.I. and Capital Accounts L.L.C. engaged in a joint private business partnership / joint venture program?"

Both the warden and the P.I.O. both responded back conceding and confirming I.C.I. has a joint venture partnership with Capital Accounts L.L.C. (See Exhibits 18 & 19)

## CLAIM OF RELIEF

33) Plaintiff Vanderpool sets forth the following claim of relief:

1) For the reasons set forth in paragraphs 1 through 23 and 36 through 32, and under Count I, paragraphs 36 through 59. Plaintiff Vanderpool is seeking $76,000 in compensatory damages from the defendants for his federally protected right being violated by the defendants, specifically his fourteenth Amendment rights, Equal Protection Clause under **42 U.S.C. § 1983**

2) For those reasons set forth in paragraphs 1 through 23 and 26 through 32, and under Count I & II paragraphs 60 through 64, Plaintiff Vanderpool is seeking from the defendants, $20,000 in punitive damages (or an amount deemed just by the jury) for the defendants conspiring to interfere with his civil rights under **42 U.S.C. § 1985(3)**

3) For those reasons set forth in paragraphs 1 through 23 and 26 through 32 and Counts I, II, & III, paragraphs 65 through 69, Plaintiff Vanderpool is seeking from the defendants, $20,000 in punitive damages (or an amount deemed just by the jury) for the defendants failing to prevent a conspiracy in depriving the plaintiff of his federally protect rights under **42 U.S.C. § 1986**

4) For those reason set forth in paragraphs 1 through 32 and Counts IV paragraphs 70 through 77, Plaintiff Vanderpool is seeking from the defendants $76,012, for violating **29 U.S.C. § 206(b)** Fair Labor standards Act (FLSA)

5) For those reasons set forth in paragraphs 1 THROUGH 32, and Count V, Paragraphs 78 through 83, Plaintiff Vanderpool is seeking from the defendants $60,000 (or an amount deemed just by the jury) in punitive damages for the defendants violating his federally protected rights, Specifically the 5th and 8th Amendments of the United States Constitution under **42 §.U.S.C. § 1983**

## RELIEF  REQUESTED

The Plaintiff request the following relief;

1) Upon a finding of being liable, assess the compensatory and punitive damages against the defendants as the court and/or jury deem they are jointly and/or severally liable.

2) Assess all court costs and filing fees to the defendants.

3) Ensure that all awards are carried out by the defendants

4) If the court, in the interest of all involved, finds it necessary, order a mediation to settle the case before a jury trial takes place.

5) The court order the defendants not to take any retaliatory action against the plaintiff, including facility-to-facility transfers, lateral house movements, or harassment, unless there is a legitimate reason brought forth to the court during, and 90 days after the cause is disposed of.

6) Upon a finding of liability under Counts I, II, & III, forward the cause to the Attorney General for an investigation and possible criminal charges under **42 U.S.C. § 1997(a)** and **18 U.S.C. § 241,242** for deprivation and conspiracy to deprive the plaintiff of his civil rights.

7) Any and all other relief the court finds just and proper.

## VI. LEGAL CLAIMS

35) Plaintiff reiterates and incorporates by reference each and every allegation heretofore set as a part hereto:

## COUNT I

### 42 U.S.C § 1983.  DEPRIVATION OF RIGHTS

36) **42 U.S.C § 1983 States:** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress; except that in any action brought against a judicial officer for an act or omission taken in such officers judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

37) Plaintiff Vanderpool brings forth a claim that his civil rights were violated, specifically the Fourteenth Amendment, Equal Protection Clause of the United States Constitution, by the Defendants in this cause.

Plaintiff Vanderpool brings forth this claim with no suspect classification and as a "class-of-one".

38) The United Sates Supreme Court in <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) Stated:

"Our cases have recognized successful equal protection claims brought by a "class-of-one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. "

See <u>Sioux City Bridge Co. v Dakota County</u>, 260 US 441, 67 L. Ed. 340, 43 S. Ct. 190 (1923); <u>Allegheny Pittsburgh Coal Co. v Commission of Webster Cty</u>., 488 U.S. 336, 102 L. Ed. 2d 688, 109 S. Ct. 633 (1989).

39) In so doing, we have explained that " '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' "<u>Sioux City Bridge Co</u>., *supra*, at 445, 67 L. Ed. 340, 43 S. Ct. 190 (quoting <u>Sunday Lake Iron Co. v Township of Wakefield</u>, 247 U.S. 350, 352, 62 L. Ed. 1154, 38 S. Ct. 495 (1918).

40) In <u>Olech</u>, *Supra*., the Supreme Court stated that "legislative and regulatory action" are contestable under the Equal Protection Clause. See Also <u>Engquist v. Or Dept of Agric</u>. 553 U.S. 591 (2008), <u>Raymond v. Chicago Union Traction Co</u>. 207 U.S. 20, 35-36, 28 S. Ct. 7, 52 L. Ed. 78 (1907)

("In the prison context, the Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest.") <u>Hudson v. Palmer</u> 468U.S. 517, 523, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984) "But such claims require the plaintiff to show that defendants treated him differently from others who were similarly situated and that there was no rational basis for the difference in treatment".

<u>Olech</u>, *Supra.* See Also <u>City of Cleburne v. Cleburne Living Ctr.</u> 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)

41) <u>If no fundamental right or suspect classification is involved,</u> equal protection claims are evaluated under the rational-basis standard of review.

To prevail under this standard of review, a plaintiff must prove the defendant: "(1) intentionally treated him differently from others similarly situated; and (2) the difference in treatment was not rationally related to a legitimate state interest." <u>Srail v. Vill. Of Lisle</u>, 588 F. 3d 940 (7th Cir. 2009) Citing <u>Olech</u> and <u>Engquist</u> *Supra.*

1) <u>Defendants Intentionally Treated Him Differently From Others Similarly Situated</u>

42) The defendants in this cause entered into a Joint Private Business Partnership contract under 11-10-7-2(b) which leased an office space on the grounds of Wabash Valley Correctional Facility in the South Industries Building to Capital Accounts L.L.C. and allowed them to use offenders to carry out their operations.

There is a policy (AP 02-01-10) (Exhibit 3), which regulate the operation and wages for offender assigned to these programs:

43) Under Administrative Procedure AP 02-01-106, a joint private business partnership is defined as:

L.    JOINT PRIVATE BUSINESS PARTNERSHIP: A business arrangement approved by the Commissioner that provides employment for adult offenders with a private business on the grounds of a correctional facility, in which the offender is paid a wage comparable for the job, as paid in the community.

Administrative Procedure AP 02-01-106 States and requires;

XIV.  WORK RELEASE/COMMUNITY RE-ENTRY CENTERS AND PEN INDUSTRIES JOINT VENTURE PROGRAMS:

"Offenders classified to a Work Release/Community Re-Entry Center program or assigned to a PEN Industries Joint Venture program shall not be provided State wages. These offenders are expected to obtain and retain employment at a pay rate commensurate with other employees that perform comparable work in the community. In no circumstance shall an offender be paid less than the minimum wage indicated by federal and State guidelines."

XVI.  APPLICABILITY:

"This policy and administrative procedure is applicable to all Department facilities in which offenders are housed, including adult and Division of Youth Services facilities. Intake units shall not be required to pay an offender in those units unless the offender is permanently assigned to the unit and the offender is assigned to complete specific responsibilities associated with a particular offender assignment."

44) On the top left hand corner of the first page, there is a legal reference to the state laws which the procedure was wrote, one of them is I.C. 10-10-7-1 through 11-10-7-5. State law I.C. 11-10-7-3(a) (Exhibit 4) that falls between them demands:

(a) Any agreement entered into between the commissioner and a private person under this chapter must provide that an offender employed by a private person under this chapter will be paid at least the prevailing wage for that type of work as established by the department of workforce development, including applicable wage increases for overtime work.

Plaintiff Vanderpool contends that this policy applied to him and he was required to be paid "at a rate commensurate with other employees that perform comparable work in the community" as stated in the Administrative Poroceedure AP 02-01-106.

However, "

"in order to prevail on a class-of-one, equal protection claim, a plaintiff must present evidence of at least one similarly situated individual who is "prima facie in al relevant respects or directly

comparable in all material aspects". <u>United States v. Moore</u> 543 F. 3d 891, 896 (7th Cir.) Citing

<u>Racine Charter One Inc. v. Racine Unified School Dist.</u> 424 F. 3d 677, 680 (7th Cir. 2005)

46) To submit to this, Plaintiff Vanderpool asserts that there were two other Joint Venture Programs operating on the facility grounds (The Wire Shop and The Sewing Shop), both ran by private businesses using offender labor, who paid offenders according to the AP 02-01-106 and State Statue I.C. 11-10-7-3. The offenders where paid "commensurate with other employees that preform comparable work in the community", some making more than $18.00 an hour. These shops employed over 150 offenders at any given time.

47) To show "prima facie in all relevant respects or directly comparable in all material elements", Plaintiff Vanderpool states that's the Wire Shop, Sewing Shop, and the Call Center (Capital Accounts L.L.C.), are comparable in the following:

1) All are private businesses operating on facility grounds using offender labor.

2) The offenders are directly supervised and work directly under an employee of the private business.

3) All three private businesses make the schedules and keep track of the hours worked and employees records.

4) All three businesses have the power to hire or fire offenders and issue raises and bonuses.

5) All three private businesses use offenders to run their operations with no direction, interference, or policy or procedure from I.D.O.C. or I.C.I.

6) None of the shops provide a good or service to further the states or penological interest.

7) All the offenders who work in these shops are convicted felons incarcerated at Wabash Valley Correctional Facility.

8) All are Joint Venture Partners as defined as Administrative Procedure AP 02-01-106

9) All engage in interstate commerce.

48) To be similarly situated, Plaintiff Vanderpool meets all the qualification for whom the procedure and state statue applies.

The Only difference is Capital Accounts L.L.C., engages in interstate commerce involving intangibles and the other two engage in tangibles. But, **29 U.S.C. § 203(b)** and I.C. 24-4-7-3 defines goods and services to mean tangible and intangible and all engage in interstate commerce. However this is immaterial and irrelevant, as the policy is non-discretionary, it is an absolute, it states:

"In **no** circumstance shall an offender be paid less than the minimum wage indicated by federal and State guidelines".

49) Even the State Statue (I.C. 11-10-7-3) is absolute and non-discretionary as it demands:

Any agreement entered into between the commissioner and a private person under this chapter must provide that an offender employed by a private person under this chapter will be paid at least the prevailing wage for that type of work as established by the department of workforce development, including applicable wage increases for overtime work.

### III The difference in treatment was not rationally related to a legitimate state interest

50) Plaintiff Vanderpool now points back to Hudson, *Supra*, in which sates:

("In the prison context, Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest.")

51) The state in order to violate a prisoners constitutional right, it must have a legitimate penological reason, compelling state interest, or articulated security concern.

When talking to Defendant Victor Manzo, who was accompanied by Defendant Mark Herron, Plaintiff Vanderpool Asked Defendant Manzo why he was not being paid according to policy and the other shops, to which he replied:

28

"You're not skilled labor, and your job is not as physically demanding, no one in the call center is getting minimum wage. You're a service shop and do not create a product. You get paid state wages".

52) Plaintiff Vanderpool responds and asserts the following to this reasoning:

Nowhere in the policy or state law creates an exception to a product or service shop. In fact AP

02-01-106 (Exhibit 3 Pg. 8) Sates:

"Offenders assigned to a work assignment with PEN Industries that is not a joint venture shall be

paid a wage in accordance with PEN Industries Operating Standards"

These are state wages.

In the same policy:

"An Offender assigned to a Joint Business Partnership managed by PEN Industries at a specific

facility, shall be paid a comparable wage fond in the community"

The wages the plaintiff received where neither state wages nor comparable wages in the

community. They were set by Capital Accounts L.L.C. and not by I.C.I. As well, bonuses issues

where not "state wages".

53) The defendants reply is not a legitimate state interest, this is an illegitimate animus

toward Plaintiff Vanderpool. Defendant Mark Herron said nothing to this effect or replied. This

seems to be the rationale behind all the defendants. None of them followed the law or procedure

to ensure pay.

In fact there are four job classifications at Wabash Valley Correctional Facility:

1) Sate Jobs such as sanitation, maintenance, and labor line (mowing and trash) these

jobs pay up to .25 an hour. These are state wages

2) <u>State jobs for Private Businesses</u> that further sate interests by providing a good or service of the prison. Aramark (foodservice) Centurion (Medical) Ivy Tech (education) These are state wages

3) <u>PEN Product Jobs</u> which are ran and operated by I.C.I that provide goods and services to the state. Such as the print shop, which provides state documents, driver manuals, and posters for the state. The sign shop which makes road signs for the D.O.T. These are state wages

4) <u>Joint Venture Programs</u> which private businesses are operating on facility grounds, using offender labor that provide no goods or services for the state. These jobs are not state wages and pay at a rate comparable in the community.

54) The courts have ruled that an inaction as well as an action that causes a constitutional violation is actionable under the Equal Protection Clause if there is a "known or obvious risk" that such inaction will cause a constitutional violation.

The known risk is that the Administrative Procedure 02-01-106 is approved and signed by the Commissioner of the Indiana Department of Correction and Defendant Robert Eric Carter Jr. this procedure must be followed and no other policy by a facility or division can override it. It is handed down to all the defendants for them to review and follow, from top to bottom.

55) To ensure that this procedure is followed, there is a yearly audit, which is conducted by the Warden as directed by the same Administrative Policy AP 02-01-106:

XV.   <u>AUDITS</u>:

Annually, each Warden shall conduct an audit of offender assignments within the management control of the Warden. This audit shall be conducted in June of each year, and a report of the findings shall be forwarded to the appropriate Regional Director for review and approval.  The Regional Director shall advise the Deputy Commissioner of Operations of this report and any concerns or issues in need of consideration. The audit is to determine whether the offender assignments are appropriate or whether new

assignments should be established. This determination shall be made after consultation with the Deputy Commissioner of Re-Entry and Programs concerning educational offerings, and the Deputy Commissioner of Administration for PEN Industries expansions or modifications.

It is the responsibility of the Deputy Commissioner of Operations or designee to prepare a review and summary of the offender wage scale on a biennial basis. The review and summary shall be prepared by June 30 of each year ending in an even number and shall be submitted to the Commissioner for final determination.

56) This is an audit to ensure the policy is being followed. It starts at the bottom and works its way up to the top, giving all the defendants the opportunity to address any errors. Plaintiff Vanderpool worked in the Call Center for Capital Accounts L.L.C. for two years, for two audits, the defendants knew there was a risk but did not address it.

## Known and Obvious Risk

57) There were two other joint venture programs operating at the facility being paid accordingly. One of the first thing that any business asks when they open up is "What do we pay our employees?"

The defendants know the obvious risk because they were already following it with the other programs, knowing there was a procedure in place.

It is not merely an inaction or ignorance of the procedure and law, but an illegitimate excuse as a reason as not to follow it, to deprive the plaintiff of equal rights that add to the "Known and Obvious risk" for such conduct.

Personal responsibility exits if the conduct causing a constitutional deprivation occurred at the individuals direction or with knowledge or consent Gentry v. Duckworth 65 F. 3ed 555 (7th Cir. 1995) Citing Smith v. Rowe F. 2d 360, 369 (7th Cir. 1985)

58) Even if there is a contract that does not dictate prevailing wages or wages according to the state law and Administrative Procedure AP 02-01-10, a contract cannot overrule either of them.

59) Capital Accounts L.L.C., its owners and employees are culpable for acting under the "color of law" and having a "meeting of the minds" with the other defendants to deprive the plaintiff of his rights (See: <u>Denis v Sparks</u> 749 U.S. 24, 27-28, 101 S. Ct. 183, 66 L.Ed. 2d 185 (1980) <u>Dickman v Office of the States Atty.</u> 2018 U.S. Dist LEXIS 43043 (7th Cir). It was the defendants responsibility, with Plaintiff Vanderpool being under their care and control to ensure his right where protected.

Plaintiff Vanderpool is seeking $76,012 in compensatory damages for lost wages, due to his rights being violated under the Fourteenth Amendment, Equal Protection Clause.

## COUNT II
## 42 U.S.C. § 1985.  CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

60 )Plaintiff Vanderpool brings forth a cause of action against all the defendants listed in this cause under **42 U.S.C. § 1985(3)**, which states:

**(3) Depriving persons of rights or privileges.**  If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

61) Plaintiff Vanderpool claims the defendants, intentionally, with a known and obvious risk, in this cause violated his Fourteenth Amendment right as brought forth in those in count 1 and conspired to amongst themselves to interfere with that civil right.

The seventh Circuit Court of Appeals ruled in <u>Milchtein v. Milwaukee Cunty.</u>, (2022) U.S. App.)

62) "A plaintiff who brings a §1985(3) must pled the following:

(1) Conspiracy (2) for the purpose of depriving, either directly or indirectly, any person or class of person, equal protection of the laws and immunities under the laws: and (3) an act of furtherance of the conspiracy (4) whereby a person is either injured in his person or property or deprived any right or privilege of a citizen of the United States"

"Additionally, the plaintiff must plead that the conspiracy was by "some racial" or perhaps otherwise class based animus" <u>Griffin v. Breckenridge</u> 403 U.S. 88, 102 (1971)

63) If race is not a factor, a discriminatory animus or "intention" must be established. Under 1 & 2 in <u>Milchtein</u> *Supra*, Plaintiff Vanderpool asserts the same conspiracy, the deprivation of his Fourteenth Amendment, Equal Protection rights and there was a meeting of the mind amongst the defendants to deprive the plaintiff of that right. Specifically, applying I.C. 11-10-7-3 and the AP 02-01-106 to him as they apply it to others when it comes to wages. The animus was to deprive him of his rights because he did not produce a product.

Under the 3rd prong, in an act to further the conspiracy, the defendants had a chain e-mail amongst themselves (not to mention the contract) which the plaintiff had a chance to read on Defendant Robert Winkers computer when he had it pulled up, which read:

Defendant Robert Winkler: Can we pay the offenders more the longer they stay? Dustin would like to know.

Defendant Victor Manzo: You can pay whatever you want, as long as it is not prevailing wages, but we may need it amend the contract to insert any changes.

This e-mail was CC'd to all defendants to further the conspiracy. Not only does it further the conspiracy but implicates the defendants.

For the 4th prong, Plaintiff Vanderpool being deprived of his Fourteenth Amendment rights, led to the loss of wages. The defendants when confronted with this still furthered the conspiracy by denial and excuses (see Exhibit 18).

64) Now, Plaintiff Vanderpool complies with Breckenridge, *Supra*, and addresses in this case, the defendants created a quasi-class to discriminate against, and separated the call center from the other joint venture programs because they are serviced based and do not handle a "product" is discriminatory in nature.

Plaintiff Vanderpool is seeking $20,000 in punitive damages for conspiracy to interfere with his civil rights.

## COUNT III

## 42 U.S.C. § 1988. FAILURE TO PREVENT CONSPIRACY

65) Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [**42 USCS 1985**], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action.

66) Plaintiff Vanderpool claims the defendants intentionally, with a known and obvious risk, in this cause violated his Fourteenth Amendment rights, as sated in counts 1 & 2 and failed to prevent the conspiracy.

67) Under **§1986**, anyone who having knowledge of a **42 U.S.C. 1985**, and the "power" to prevent or aid in preventing" the wrongful acts contemplated by the conspiracy "neglects or refuses" to prevent such acts can be held liable to the party injuried. Malone V. Am. Friends Serv. Comm. 213 F App'x 490, 494 (7th Cir. 2007)

68) Being a **§1985** & **§1986** go together, a plaintiff needs to plead (1) the defendants has knowledge (2) where a decision maker or in a position to stop the conspiracy.

69) Every defendant knew of the conspiracy as they all had a meeting of the minds and entered into a contract. Every one of these defendants where a decision maker, in a position to stop it, or prevent it

The defendants took extraordinary steps, as to how to treat him differently, instead of asking should they have.

Plaintiff Vanderpool in seeking $20,000 in punitive damages for the defendants failing to prevent this conspiracy.

## COUNT IV

## VIOLTATION OF TITLE 29 U.S.C. 206(b) OF THE FAIR LABOR STANDERS ACT

70) **29 U.S.C. 206(b)** Sates:

Every employer shall pay to each of his employees (other than an employee to whom subsection (a)(5) applies) who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this section by the amendments made to this Act by the Fair Labor Standards Amendments of 1966 [29 USCS 203, 206, 216(b), 218,], not lees than the minimum wage rate in effect under subsection (c) (1)

71) **29 U.S.C. §203(b)** Commerce means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

**29 U.S.C. §203 (i)** Goods means goods (including ships and marine equipment), wares, products, commodities, merchandise, or **articles or subjects of commerce** of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual

physical possession of the ultimate consumer thereof other than a producer, manufacturer or processor thereof.

72) I.C. code 24-4.7-2-3 further defines "consumer goods or services" to mean any of the following:

(1) **Tangible or intangible** personal property or real property that is normally used for personal, family, or household purposes.

(2) Property intended to be attached to or installed on real property without regard to whether it is attached or installed.

(3) Services related to property described in subdivision (1) or (2).

(4) Credit cards or the extension of credit.

(See Exhibit 7)

73) Capital Accounts L.L.C. is a Collection Agency, who used Plaintiff Vanderpool to engage in commerce across the United States

The handling of goods and commerce included:

1) Placing calls across the United States for:

    a.  Transmitting or transporting accounts across state lines via: fax, e-mail, first-class mail, and web based portals for collection.

    b.  Collecting from clients on direct payment to the office from patrons, by walking them through a web site to enter credit card information.

    c.  Leads from cold calls for closers.

2) Sending account progress reports to clients via faxes and e-mail.

3) Taking incoming calls from across the United States from clients and prospects.

4) Talking prospects into placing accounts with Capital Accounts L.L.C. that they currently have placed with another agency.

5) Integrating clients and prospects software with Capital Accounts web based service for account transmition, and walking them through the submission process.

It is well established that intra-prison jobs that further penological interest, produce goods or services that are consumed by the prison or its entities are not subject to the FLSA.

Here, Capital Accounts L.L.C. provides no goods, service, nor further penological interests.

74) Where an employment relationship exits under the FLSA depends on the economic reality of employment situation, which is determined by whether the alleged employer:

1) Has powers to hire and fire employees

2) Supervises and controls work schedules or conditions of employment

3) Determines rate and method of payment and maintains employment records

Hale v Arizona 967 F 2d 1358, 92 (9th Cir 1992)

George v. SC Data Ctr. 884 F. Supp. 329 (Western dist. Of Wisconsin)

75) Under the Economic Reality of Employment, Capital Accounts under this section:

1) Capital Accounts L.L.C., Defendants: Robert Winkler, Dustin Holbrook, and John Westly Shutt, conducted the interview process and decided who was hired and submitted those names to the facility. In the event termination was wanted the same defendants could fill out State Form 3380R Offender Evaluation and Performance Report, to have and Offender removed from the job. (See Exhibits # 6(a) & 6(b)

2) Capital Accounts employees, Defendants Robert Winkler and Dustin Holbrook set the work hours. Defendant Robert Winkler, who worked on the facility grounds controlled the work hours. He would direct custody to call his works out to the call center. Offenders worked during Capital Accounts corporate work hours.

3) Capital Accounts set the pay rate and bonuses, which I.C.I. approved. When raises where issued, a Capital Accounts Employee would fill out State Form 3380R Offender Evaluation and Performance Report, and put in for a raise.

Capital Accounts L.L.C. forwarded the time sheet and bonuses to I.C.I., who in turn billed Capital Accounts L.L.C. for the hours and bonuses pursuant to the wages set by Capital Accounts L.L.C. This was done in an effort to bypass facility policy and procedure, as well as state and federal law to maximize profit margins.

76) A prerequisite to finding that an inmate has employee status under the FLSA, is that the prisoner has freely contracted with a non-prison employer to sell his labor, under this analyses, where an inmate participates in non-obligatory work program in which he is paid by an outside employer may seek a claim under FLSA.

Henthorn v. Dept. of Navy 29 F. 3d 682 (D.C. Cir 1994)

In support of his claim, the Plaintiff asserts when calling prospects and clients he was required to introduce himself as:

"I am with Capital Accounts...."

Or "I am an account manager with Capital Accounts"   (See exhibit scripts 5a & 5b)

As well the e mails and faxes that the plaintiff sent stated:

Daniel Vanderpool
Capital Accounts
P.O. Box 680608
Franklin, TN 37068

77) The Courts have stated in the past that the **Ashurst-Summers Act 18 U.S.C § 1761, 1762**, address how prisoners should be paid, however this act is not a private right to action and for the above reasons, complying with the Economic Reality of Employment as a means for review to apply this in this case. Plaintiff Vanderpool also asserts that the previously stated Administrative Procedure (AP 01-02-106) States:

"In no circumstance shall an offender be paid less than the minimum wage indicated by the federal and state guidelines"

Subjecting it for review by the court.

## COUNT V

## DEFENDANTS VIOLATED THE PLAINTIFFS FIFTH AND EIGHTH AMENDMENT RIGHTS

78) Plaintiff Vanderpool brings forth this count under **42 U.S.C. §1983.** Specifically this Fifth Amendment right against self-incrimination and his Eight Amendment right against cruel and unusual punishment.

Plaintiff Vanderpool asserts he was forced to engage in illegal, unethical, and unsavory business activity, under the threat of termination.

### Do-Not-Call Lists

79) During his manual and auto dialing to prospects, they would request that they be put on the do-not-call list.

80) Plaintiff Vanderpool was instructed to disposition these call as "not interested". This would place the number back into rotation to be called again.

Plaintiff Vanderpool inquired and complained about this because he often got yelled at or cussed at over the phone. Plaintiff Vanderpool was told "we do not have a do-not-call list, companies cannot request to be placed on it." Even though some numbers called where personal.

81) Plaintiff Vanderpool asked if this was illegal and was told "No, just do your job", "If you do not like it, I can fire you".

Capital Accounts L.L.C. never compiled a do-not-call list and continued to harass people abd used Plaintiff Vanderpool as a tool to do so.

82) **15 U.S.C. §1651(b)** the do-not-call national registry provision of the Telemarketing Sales Rule (C.F.R. 310.4 4(b) (1) (iii). Which was promulgated by the Federal Trade Commission, Effective March 31, 2003, is ratified

42

"Initiating any outbound calls to a person when: that person previously has stated he or she does not wish to receive an outbound telephone call made by or on behalf of the seller who's goods or services are being offered.

16 C.F.R. §310.4 (b) (1) (ii) prohibits anyone from direction another person to deny or interfere with a person's right to be placed on a "do-not-call" list. This provision is intended to ensure that a person who uses a 3rd party telemarketers, cannot shield themselves from liability under this provision by suggesting the violation was a single act caused by a "rouge" telemarketer when there is evidence that telemarketer to deny or defeat "do-not-call list requests <u>Untied States v. Dishnetwork L.L.C.</u> 667 F. Supp. 2d 952, 2010-1 Trade Cas (CCH) 76909, 2009 U.S. Dist. (C.D. Ill 2009)

Plaintiff Vanderpool asserts he was forced to incriminate himself and break the law under the direction of Capital Accounts L.L.C., under the threat of termination, a violation of his 5th and Eight Amendment rights.

<u>Unsavory and Unethical Business Activity</u>

83) Plaintiff Vanderpool was told to lie to clients about how their accounts where worked and told to charge them even if no work was performed on the account by Capital Accounts L.L.C. and its listed defendants.

Many times Capital Accounts L.L.C. would receive accounts lacking in information such as D.O.B., S.S.N. and phone numbers. These accounts are not called, sent letters, or credit reported. So, if a client calls stating an account was paid, Plaintiff Vanderpool was told to charge them anyways and ask for more accounts

Plaintiff Vanderpool was told to lie by Defendants Robert Winkler and Dustin Holbrook about how accounts where handled when client would call.

Such as, when a client call and asks if John Doe was called and what did he say. Because Plaintiff Vanderpool did not have access to private information he was told to say anything to make them happy and to send more accounts.

Plaintiff Vanderpool did follow these directions as required under the threat of being fired, a violation of his 8th Amendment rights. Plaintiff Vanderpool is seeking $60,000 in punitive damages for his rights being violated under these two inter-claims.

<u>Capital Accounts L.LC. History</u>

Capital Account L.L.C. has a long and extensive history of unethical, unsavory, and illegal business practices.

See:

<u>Waddell v. Capital Accounts L.L.C.</u> 2019 (W.V.)

<u>Edmounds v. Capital Accounts L.L.C.</u> 2020 (Penn.)

<u>Mendoza v Capital Accounts L.L.C.</u> 2020 (Fl.)

As well as others in the past, that shows a pattern of business activity.

## AFFIRMATION OF PLAINTIFF

I, Daniel C. Vanderpool Jr. the plaintiff in the aforementioned cause, do affirm that I have read all of the statements contained in this complaint and that I believe them to be true and correct to the best of my personal knowledge and belief.

Signed this 16th day of September, 2022.

Plaintiff