UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DANIEL C. VANDERPOOL, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:22-cv-00403-JPH-MKK |
| | ) |
| CAPITAL ACCOUNTS LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER SCREENING COMPLAINT AND DIRECTING FURTHER PROCEEDINGS**

This lawsuit is based on Daniel Vanderpool's claims that the defendants violated his rights as a prisoner at Wabash Valley Correctional Facility and an employee in a call center operated by a private industry at the prison. Because Mr. Vanderpool is a prisoner, the Court must screen his complaint pursuant to 28 U.S.C. § 1915A.

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent

1

standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Capital Accounts, LLC, is a third-party debt collection firm. *See* Capital Accounts, LLC, *Services*, https://usecapital.com/services/ (last visited Jan. 4, 2023). Indiana Correctional Industries (ICI) is a subdivision of the Indiana Department of Correction (IDOC). ICI manages industrial operations at Indiana's prisons to generate useful products for the state and to aid prisoners in developing marketable skills. *See* ICI, *Vision Mission & History*, https://www.in.gov/idoc/indianacorrectionalindustries/about-indiana-correctional-industries/vision-mission-and-history/ (last visited Jan. 4, 2023).

ICI and Capital Accounts operate a call center at Wabash Valley Correctional Facility (WVCF). Mr. Vanderpool worked at the call center from September 30, 2019, until November 11, 2021. Dkt. 1 at ¶ 15.

ICI characterizes the call center as a "joint venture." *See* ICI, *Wabash Valley Correctional Facility*, https://www.in.gov/idoc/indianacorrectionalindustries/locations/wabash-valley-correctional-facility/ (last visited Jan. 4, 2023). Mr. Vanderpool was interviewed for the job by three Capital Accounts officials—two owners and a site manager who worked at the call center at WVCF. Dkt. 1 at ¶ 15. These officials made the decision to hire Mr. Vanderpool. *Id.* An ICI employee supervised the interview but did not participate. *Id.* Once he was hired, a Capital Accounts manager directly supervised Mr. Vanderpool, evaluated his work, and determined his eligibility for continued employment and bonuses. *Id.* at ¶ 22. When Mr. Vanderpool made calls, he was instructed to identify himself as a manager for or representative of Capital Accounts, not ICI. *Id.* at ¶ 19.

A Capital Accounts manager worked at the call center, supervised the prisoner-employees, and logged their hours and eligibility for performance bonuses. *Id.* at ¶ 16. Capital Accounts issued payment for prisoners' wages to ICI, which added the corresponding funds to the inmates' trust accounts. *Id.*

Mr. Vanderpool's hourly rate at the call center began at 80 cents and topped out at $1.50. *Id.* at ¶ 18. Inmates in other joint ventures and industrial programs at WVCF received substantially greater pay. *Id.* at ¶ 46.

Mr. Vanderpool asserts claims against nine defendants, including:

- Capital Accounts;
- its majority and minority owners, John Shutt and Greg Norwinski;
- its sales and site managers, Dustin Holbrook and Robert Winkler;
- ICI's director of operations, Mike Herron, and deputy director of operations, Victor Manzo;
- IDOC Commissioner Robert Carter; and
- WVCF Warden Frank Vanihel.

### III. Fair Labor Standards Act Claim

This action **will proceed** with claims against all nine defendants pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206, 216.

The complaint alleges that each defendant played some role in initiating or managing Mr. Vanderpool's employment at the call center on behalf of Capital Accounts or ICI or in determining pay rates for call center workers. *See* 29 U.S.C. § 203(d) (defining "employer" as including both entities and "any person acting directly or indirectly in the interest of an employer"); *Pope v. Espeseth, Inc.*, 228 F. Supp. 884, 889 (W.D. Wis. 2017) (discussing joint-employment relationships). The FLSA requires employers to pay their employees a minimum wage, which

exceeds the wages Mr. Vanderpool received for his work at the call center. 29 U.S.C. § 206(a). Generally, "[p]rison and jail inmates are not covered by the FLSA." 544 F.3d 812, 814 (7th Cir. 2008). This is because the FLSA "is intended for the protection of employees, and prisoners are not employees of their prison." *Bennett v. Frank*, 395 F.3d 409, 409 (7th Cir. 2005). When prisons give inmates jobs, even for pay, they are thought to do so to limit operational costs or for penological or rehabilitative reasons. *Id.* at 410.

The Seventh Circuit has suggested, though, that the FLSA's minimum-wage requirement may apply "to prisoners working for private companies under work-release programs" because they are working "as free laborers" advancing private enterprise rather than for penological, rehabilitative, or cost-control reasons. *Id.* In *Lashbrook v. Grace College and Theological Seminary*, Judge Magnus-Stinson entertained a FLSA wage claim by an Indiana prisoner who worked as a tutor for a university that operated an educational program inside the prison. No. 2:15-cv-00206-JMS-MJD, 2016 WL 7242462 (S.D. Ind. Dec. 15, 2016). Only after developing the record and reviewing summary judgment motions could the Court determine that Lashbrook's situation differed from the situations *Bennett* recognized as potentially falling within the FLSA. *Id.* The same development is warranted here.

The FLSA claims will proceed against the defendants in their **individual capacities only**. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Because Capital Accounts itself is a defendant, official capacity claims against Capital Accounts employees would be redundant. Meanwhile, official capacity claims against the IDOC defendants would

function as claims against the state and are therefore barred by the Eleventh Amendment. *Nuñez v. Indiana Dep't of Child Servs.*, 817 F.3d 1042 (7th Cir. 2016).

### IV. Fifth, Eighth, and Fourteenth Amendment Claims

Mr. Vanderpool also alleges that the defendants violated his Fifth Amendment protection against self-incrimination, his Eighth Amendment protection against cruel and unusual punishment, and his Fourteenth Amendment right to equal protection of the laws. These claims are **dismissed** for **failure to state a claim** upon which relief may be granted.

Mr. Vanderpool alleges that Defendants Winkler and Holbrook directed him to engage in dishonest or possibly illegal conduct, including billing clients for services not rendered and phoning people who asked to be taken off call lists. Dkt. 1 at ¶¶ 24–25. This, he alleges, caused him dizziness, increased heart rate, brain fog, and nausea. *Id.* at ¶ 25. If he did not follow the defendants' orders, he would be fired. *Id.*

The Supreme Court recently summarized the scope of the Fifth Amendment's protection against self-incrimination:

> The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 6 (1964), provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." This Clause "permits a person to refuse to testify against himself at a criminal trial in which he is a defendant" and "also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). In addition, the right bars the introduction against a criminal defendant of out-of-court statements obtained by compulsion. See, *e.g.*, *Bram v. United States*, 168 U.S. 532, 565 (1897); *Miranda*, 384 U.S. at 466; *Michigan v. Tucker*, 417 U.S. 433, 440–442 (1974).

*Vega v. Tekoh*, 213 L. Ed. 2d 479, 142 S. Ct. 2095, 2101 (2022). The Fifth Amendment gives Mr. Vanderpool a right to refuse to confess to crimes or testify to matters that might subject him

5

to criminal liability. It does not give him a right to commit crimes and then sue others involved in the crimes for damages.

The Eighth Amendment, meanwhile, prohibits prison officials from using excessive force against inmates and requires that they provide humane conditions of confinement, including adequate food, clothing, shelter, medical care and protection against violence from other inmates. *Farmer v. Brennan*, 511 U.S. 825, 832–34 (1994). The Eighth Amendment did not endow Mr. Vanderpool with a right to prison employment. An inmate may prove an Eighth Amendment violation by showing that the defendant "knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020). But no allegations in the complaint support a reasonable inference that the defendants knew that pressuring Mr. Vanderpool to act unlawfully or unethically placed him at substantial risk of developing a serious health condition. To the extent the defendants threatened Mr. Vanderpool, they threatened to fire him from the call center. Nothing in the complaint suggests he was not free to quit if the defendants' demands troubled him, and yet he did not do so. Mr. Vanderpool does not describe model workplace behavior or ethical standards, but neither does he describe a constitutional violation that allows him to recover damages.

Finally, Mr. Vanderpool asserts a "class of one" equal protection claim. Dkt. 1 at ¶ 38. "[A] class-of-one equal protection challenge asserts that an individual has been 'irrationally singled out,' without regard for any group affiliation, for discriminatory treatment." *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (quoting *Engquist v. Or. Dep't Agric.*, 553 U.S. 591, 601 (2008)). A class-of-one claim "is cognizable where an individual alleges that he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Vill. of Oak Park v. Olech*, 528 U.S. 562, 564 (2000)). Mr. Vanderpool

does not allege that he was treated differently from other similarly situated inmates—that is, other inmates who worked at the call center. Likewise, he does not allege that he was singled out without regard for group affiliation; he alleges that his pay was determined by the fact that he was employed at the call center. If true, the allegations in the complaint do not support a class-of-one claim.

## V. Conclusion and Service of Process

As discussed in Part III, the action **will proceed** with FLSA claims against all nine defendants in their individual capacities. All other claims are **dismissed**.

The claims discussed in Parts III and IV are the only claims the Court identified in the complaint. If Mr. Vanderpool believes he asserted claims that the Court did not address, he must notify the court **no later than January 27, 2023**.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to the defendants in the manner specified by Rule 4(d). Process will consist of the complaint (dkt. [1]), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this order.

The **clerk is directed** to serve the IDOC employees electronically.

The **clerk is directed** to correct the spelling of Warden Vanihel's name on the docket from "Vanihill" to "Vanihel." *See* IDOC, *Wabash Valley Correctional Facility*, https://secure.in.gov/idoc/find-a-facility/adult/wabash-valley-correctional-facility/ (last visited Dec. 13, 2022).

Mr. Vanderpool's motion requesting information on the status of the case, dkt. [9], is **granted** insofar as the Court has issued this order. The Court will issue further instructions after the defendants appear and answer the complaint.

Nothing in this order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 1/6/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DANIEL C. VANDERPOOL, JR.
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
CARLISLE, IN 47838
Electronic Service Participant – Court Only

Electronic service to IDOC Defendants:

    Robert Carter, commissioner

    Frank Vanihel, Warden, Wabash Valley Correctional Facility

    Mike Herron, Director of Operations, Indiana Correctional Industries

    Victor Manzo, Deputy Director of Operations, Indiana Correctional Industries

Capital Accounts, LLC
P.O. Box 680608
Franklin, TN 37068

Wesley John Shutt
Capital Accounts, LLC
P.O. Box 680608
Franklin, TN 37068

Greg Norwinski
Capital Accounts, LLC
P.O. Box 680608
Franklin, TN 37068

Dustin Holbrook
Capital Accounts, LLC
P.O. Box 680608
Franklin, TN 37068

Robert Winkler
Capital Accounts, LLC
P.O. Box 680608
Franklin, TN 37068